**STATE, Plaintiff-Appellee, v. CRAWFORD, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4550. Decided June 5, 1951.

Ralph J. Bartlett, Pros. Atty., Edmund B. Paxton, Asst. Pros. Atty., Columbus, for appellee.
Roland G. Allen, Columbus, for appellant.

## OPINION

By HORNBECK, PJ.

The appeal is on questions of law from a judgment and sentence of the defendant-appellant on a conviction of guilty on count No. 1 which count of the indictment charged the defendant with unlawfully killing one, Lula McCoy, while operating a motor vehicle without due regard for the safety

and rights of others and so as to endanger the life, limb or property of other persons in the lawful use of the streets and highways. The second count of the indictment was a charge of driving a motor vehicle at a rate of speed greater than is reasonable and proper. The third count was a charge that defendant operated his motor vehicle while under the influence of intoxicating liquor.

The jury returned a verdict of not guilty on the second and third counts of the indictment.

Upon the conclusion of the State's case in chief, defendant moved for a directed verdict which was overruled and after conviction, motion for new trial was duly filed and overruled. The action of the Court on these motions is made the subject of assignments of error.

In the general charge relating to the law of the case as related to the speed with which the defendant was operating the vehicle at the time of the collision, after quoting the applicable section of the statute, §6307-21 GC, the trial judge said:

"It shall be prima facie lawful for the operator of a motor vehicle to operate the same at a speed not exceeding the following: 20 miles per hour when passing a school building or the grounds thereof during school recess and while children are going to or leaving school during the opening or closing hours and when appropriate signs giving notice thereof are erected; 25 miles per hour in all other portions of a municipal corporation, except on state routes and on through highways outside business districts.

"Therefore, this not being a location where a school was being passed and it being a location outside of the business district, the prima facie lawful speed at this location was 25 miles per hour.

"And the statute further provides, it shall be prima facie unlawful for any person to exceed any of the speed limitations in this or in other sections of this act.

"It will be noticed that said section provides that it shall be prima facie lawful to operate an automobile at a rate of speed of 25 miles per hour at this particular location."

The Court continued and properly said to the jury that the ultimate test was whether or not the automobile of the defendant was being driven at a rate of speed which was, or was not, reasonable or proper taking into consideration all of the terms of the statute. The trial judge also charged on the assured clear distance ahead portion of the section of the Code. This charge of the Court is made the subject of an assignment of error. Appellant asserts that the scene

of the collision of the automobiles, Bassett and Leonard Avenues, was not a 25 mile but a 35 mile per hour speed zone.

Traffic Ordinance of the City of Columbus No. 1279 designated Leonard Avenue at the scene of the collision as a through highway, and §6307-21 GC provides that it shall be prima facie lawful to operate a motor vehicle at a speed not exceeding 35 miles per hour on state routes or through highways within municipalities outside business districts. There is evidence in the record from which the trial judge and the jury could have determined that Leonard Avenue at the intersection of Bassett Avenue was outside business districts.

During the deliberations of the jury they were called to the courtroom by the trial judge to determine if they had reached a verdict and at that time the Court enjoined upon them the obligation to make every reasonable effort to agree upon a verdict. This action of the trial judge is made the subject of the 5th assignment of error predicated upon the claim that the language of the trial judge constituted in effect a direction to the jury that it must reach a verdict.

The ordinance was not offered in evidence and unless the trial judge must have taken judicial notice of the ordinance it was not brought to his attention. We discussed, at considerable length, the obligation of a reviewing court to take judicial notice of a municipal ordinance on an appeal from a conviction of a traffic violation in **City of Dayton v. De-Brosse, 62 Oh Ap 232, 234.** The Supreme Court announced the doctrine in **Orose v. Hodge Drive-It-Yourself Co., Inc., 132 Oh St 607,** 9 N. E. (2d) 671, second syllabus:

"In reviewing the judgment of a municipal court on questions of law including the weight and sufficiency of the evidence, the reviewing court will take judicial notice of an ordinance of the municipality to the same extent as the municipal court did and had a right to take notice thereof."

It will be noted that this pronouncement arose from an action instituted, tried and determined in a Municipal Court which action was predicated upon the violation of a municipal ordinance. The Court in the cited case held, first syllabus:

"A municipal court will take judicial notice of an ordinance of its own particular municipality."

Thus, it is the obligation of a reviewing Court to take judicial notice only of those matters of which the trial court should have taken notice. The offense charged here arising in the Common Pleas Court and tried there did not enjoin upon the trial judge the obligation of taking judicial notice

of the municipal ordinance of the City of Columbus designating Leonard Avenue as a through highway. The charge of the Court was not erroneous upon the state of the record.

Upon cross-examination of the defendant, he answered that he had been convicted of a charge of drunkenness in the Municipal Court of the City of Columbus and the jury was instructed on this subject as follows:

"Members of the Jury, there was evidence brought out on the cross-examination of the defendant as to a prior conviction of the defendant on a charge of drunkenness. In that regard, Members of the Jury, I say to you that in any criminal case, and I am only reading that part of the Statute, **Sec. 13444-19 GC**, as is pertinent to the matter at hand, namely, the introduction of this matter of drunkenness—now, I will go back—'In any criminal case where the defendant's motive, intent, the absence of mistake or accident on his part is material, it may be proved whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant.'"

Counsel for the defendant noted objections and exceptions to this portion of the charge and although not argued in the briefs it is brought onto the record by the appeal. If this testimony was admissible under §13444-19 **GC**, the jury may have been of opinion that the proof of the offense of drunkenness was probative on the question whether or not the collision was the result of an unavoidable accident. It may have concluded that this proof of a conviction of another crime tended to show that the collision was not accidental. The charge in our judgment was erroneous and prejudicial. The statute has no application to any of the charges in the indictment. If it could have application to any of the charges it would be that of drunkenness, an element of the offense charged in the third count of the indictment, and it was not restricted to that count. This statute is an enactment of the doctrine of scienter in criminal offenses where it is applicable. In cases involving the motive or intent with which an act is done it is competent to show the commission of like offenses if they tend to show the state of mind which actuated the defendant in the commission of the act charged. The offense of second degree manslaughter requires no proof of intent or motive and we doubt if that part of the statute which speaks of mistake or accident relates to an unintentional killing as is set out in second degree manslaughter and in the indictment. But, if it is conceivable that the statute could be given application it is required that the offense proven

be a like offense. The charge here is the killing of a person in the commission of an unlawful act. The charge to which it is shown the defendant entered a plea of guilty was drunkenness and not a killing or driving an automobile while intoxicated.

Manslaughter as now defined in §6307-18 GC is predicated upon a violation of a law of this state applying to the use or regulation of traffic. Manifestly, a conviction of drunkenness under the city ordinance could not be an offense like unto that charged in the indictment here. In **Steele v. State, 121 Oh St 332,** the defendant was convicted of manslaughter based upon the violation of the ordinance of the City of Warren, Ohio. The Court reversed the judgment upon the authority of **Johnson v. State, 66 Oh St 59, 92 N. E. 22,** and disapproved and overruled **paragraphs 3 and 4 of State v. O'Mara, 105 Oh St 94.** The charge of the Court permitting the jury to consider the former conviction of the defendant of a charge of drunkenness for the purpose of refuting any claim of an unavoidable accident was, in our judgment, erroneous and it is readily conceivable that it may have been prejudicial to the defendant. **Sec. 13449-5 GC.**

The trial judge presented this case to the jury upon the defense that the collision was an unavoidable accident; (No exception to the correctness of this theory of the case has been suggested by the State.) that the foot brakes of defendant's automobile suddenly became completely ineffective. Defendant testified that on the day before the accident he had purchased the car; had it completely checked and that it was in sound condition; that on the night of the collision he had driven it for considerable distance through city traffic; that he had stopped at several intersections because of traffic lights and that his foot brakes were working perfectly; that he saw the car which he struck at a distance of several hundred yards; that the traffic light had changed to green as he approached the intersection; that he thought the car ahead of him would move into and through the intersection; that he did not realize that it would not so move until at a distance of about sixty feet therefrom and at that moment he applied his foot brakes and then for the first time discovered that he had no such brakes. It further appeared that his emergency brake was set when his automobile was inspected after the collision. There was also testimony to the effect that on the day succeeding the collision an examination of the hydraulic brakes on defendant's car disclosed that practically all of the liquid in the master cylinder had leaked out which would explain the failure of the brakes to operate.

The jury reached a verdict of not guilty of the counts of the indictment charging the killing while driving in an intoxicated condition and driving at a rate of speed faster than was reasonable and proper and failing to stop within the assured clear distance ahead.

It is difficult to understand how the jury could consistently return the verdict of guilty under one count and not guilty under the other two inasmuch as they were so closely related. The fact that the jury did so return the verdict would not support a reversal were it not for the probable effect of the charge as given respecting the admission of the conviction of the defendant of drunkenness on the theory that it could be considered as tending to disprove any accident.

Inasmuch as the case may be tried again, we direct attention to another part of the general charge which, although we would not say was prejudicially erroneous, could be clarified. The Court used this language:

"Therefore, you will not only carefully examine the facts and circumstances in evidence pertaining to his brakes but you will also examine the facts and circumstances in evidence as to whether or not he could have avoided the collision with the Garrett car by going around it, if you do find that his brakes were defective through no fault of his own, and if perchance, you do find from the facts and circumstances in the case that he could have avoided the collision by going either to the right or to the left of the Garrett car, well, then, of course, he would be guilty of a violation and you may properly so find him under this particular section of the Code. If not, it would be proper for you to find him not guilty."

No doubt the trial judge meant to say to the jury that if it found that the brakes on defendant's automobile were defective through no fault of his own and this condition caused the collision they could find that the collision was an unavoidable accident. We do not believe that it was proper to say to the jury, without qualification, that if the defendant could have avoided the collision by going to the right or to the left of the Garrett car he would be guilty of a violation of the section of the Code involved. Manifestly, he could have gone around the Garrett car if he knew or should have known that it was to remain in his line of traffic when he came up to the place occupied by the Garrett car at the time of the collision.

An instance where the trial judge should have admitted the testimony proffered by the defendant is found at page 186 of the record. The defendant claimed that he had been at-

tacked after the collision and as a result he became temporarily unconscious. In discussing what happened, he said

"A. I came to just long enough just to hear something—I heard them say, 'I will fix him.'

Q. Then what happened?

A. Well, then, I felt something—I took it—it wasn't a knife —it seemed more like a screwdriver or a chisel, and then right —I think it was right here—whether it was a fist or a foot, I don't know.

Q. What did you see there as to what the wound was like?"

Upon objection, the witness was not permitted to answer this question. The question was proper and the answer should have been admitted. Of course, the witness would not have been permitted to discuss the character of the wound in medical terms but he could state in his own language how it appeared.

The Court did not err in refusing to sustain the motion of defendant to dismiss the first count of the indictment at the conclusion of the State's case and the verdict and judgment are not against the manifest weight of the evidence.

For the error in the charge as to the application of §13444-19 GC, the judgment will be reversed and the cause remanded.

WISEMAN and MILLER, JJ, concur.